1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BERNADINE LEWIS,

      Plaintiff,

  v.

PACIFIC MARITIME ASSOCIATION, et al.,

      Defendants.

_____/

No. C 06-04941 CRB

**MEMORANDUM AND ORDER**

     This employment discrimination action arises out of an altercation at work between two co-workers, plaintiff Bernadine Lewis ("Lewis") and Roslyn Livingston-Kirkwood ("Kirkwood"). Both women are longshore workers. The resulting complaint against Lewis was resolved through the grievance process established by the collective bargaining agreement governing her employment. After an arbitrator found her guilty of assault she was suspended for one year from work. Lewis sued defendants Pacific Maritime Association ("PMA") and APM Terminals North America, Inc. ("APM"), claiming she was treated unfavorably in the grievance process because of her race, sex and disability. Defendants now move jointly for summary judgment. After carefully considering the pleadings and evidence submitted by the parties, having granted plaintiff additional time to respond to defendants' motion, and having had the benefit of oral argument, the Court GRANTS defendants' motion for summary judgment.

**BACKGROUND**

Lewis is an African-American female employed as a longshore worker at the Oakland port.  Her co-worker, Kirkwood, is an African-American female employed as a marine clerk.  PMA is a non-profit association that serves as a collective bargaining and payroll agent for about 90 stevedoring, shipping and marine terminal companies ("Member Employers") that employ longshore workers and marine clerks in the ports in California, Washington and Oregon.  APM is a marine terminal company and a PMA Member Employer.

On May 15, 2002, Lewis and Kirkwood had a heated exchange of words during work at APM.  Kirkwood contended that Lewis struck her in the face with her gloves, while Lewis contended that there was no physical contact.  Because Lewis is a member of the International Longshore and Warehouse Union ("ILWU"), the dispute was resolved through the grievance process established by the Pacific Coast Longshore Contract Document ("Longshore Contract"), the collective bargaining agreement executed by PMA with the ILWU.  The Longshore Contract provides for the creation of Joint Port Labor Relations Committees ("Joint Port Committees"), which have the duty to decide issues of dispatch, registration, discipline and grievances.  The Joint Port Committees are comprised of representatives appointed by the Member Employers and the ILWU-affiliated Locals.  Id. The Longshore Contract also provides that if the local Joint Port Committee cannot reach agreement on how to adjudicate a grievance or complaint, the matter is submitted to the Area Arbitrator for arbitration.  The arbitrator's decision is final, unless the decision is appealed to the Joint Coast Labor Relations Committee, the overseeing committee which hears appeals.

Shortly after the altercation, APM filed an "Employer Complaint" against Lewis claiming that she engaged in misconduct and assault in violation of the Longshore Contract.  APM's complaint requested, pursuant to the terms of the Longshore Contract, that Lewis not be dispatched to APM Terminals until the matter was resolved by the Joint Port Committees.

On or about May 17, 2002, Kirkwood's Union, the Ship Clerk's Association, Local 34 ("Local 34"), filed a "Union Complaint" with the Joint Port Committees alleging that Lewis assaulted Kirkwood; specifically, that she "threatened" Kirkwood and "smacked" her

United States District Court
For the Northern District of California

in the face with her gloves.  Local 34 also requested that Lewis not be dispatched to APM Terminals.

Lewis was subsequently placed on non-dispatch to APM Terminals for three days (May 21, May 22, June 3), but was dispatched to work for other Member Employers.  Lewis resumed being dispatched to APM Terminals after the three days.  On or about June 11, 2002, Lewis's Union, ILWU Local No. 10 ("Local 10"), filed a complaint against APM challenging Lewis's placement on non-dispatch on the grounds it was "without sufficient cause," and requested that Lewis "be made whole" for the three days of missed work opportunities.

The Joint Port Committees attempted to resolve the complaints of APM, Local 34, and Local 10.  On or about June 30, 2002, the Longshore/Clerk Labor Relations Committee of San Francisco ("Area Committee") held a tripartite meeting because the Local Committee had been unable to resolve the issue.  Representatives for defendants and Locals 34 and 10 were present, as were Kirkwood and Lewis.  The Area Committee was also unable to resolve the complaints.

On July 6, 2002, the Local Committee held a special tripartite meeting to address the complaints.  Representatives for defendants and Locals 34 and 10 were present, as were Kirkwood and Lewis.  The Local Committee did not make a decision; however, it agreed that Lewis could resume being dispatched to APM Terminals but she would have to "announce her presence to supervision" so that she and Kirkwood would have separate work locations. The Local Committee agreed to schedule another meeting to resolve the complaints.  Id.

On or about that same day Lewis was injured on the job when her tractor was rear-ended by another tractor.  Lewis was on disability leave from that date until approximately May 3, 2003.

On July 16, 2002, the Local Committee held another special tripartite meeting to discuss the complaints and, again, could not make a decision; instead, it agreed to schedule an arbitration.  Lewis was not present because she had gone on disability leave.  Id.

**United States District Court**
For the Northern District of California

1    The arbitration was scheduled for October 27, 2003 but was delayed because a key

2    witness was not present.  On November 10, 2003, the arbitration was conducted by Gerald

3    Sutcliff.  PMA appeared on behalf of APM.  The arbitrator heard testimony from several

4    witnesses, including Lewis and Kirkwood.  No witness aside from Kirkwood testified that

5    Lewis struck Kirkwood.  The supervisor, walking boss Fred Gilliam, who was present during

6    the altercation, testified that he witnessed them arguing; that as he and Lewis walked away,

7    Kirkwood followed them and they continued to argue; and that he did not see Lewis strike

8    Kirkwood.

9    On December 17, 2003, the arbitrator found that Lewis verbally threatened Kirkwood

10   and hit her in the face with her gloves and therefore Lewis "was guilty of assault and

11   misconduct."  The arbitrator referred the case back to the parties for a decision on the

12   disciplinary action to be taken against Lewis.  He informed the parties that if no penalty was

13   decided upon within 45 days, he would issue the penalty of a one-year suspension from

14   work, the minimum penalty under section 17.821 of the Longshore Contract for a person

15   found guilty of a first time offense for assault.  APM, Local 10, and Local 34 could not agree

16   upon an alternative penalty.  Accordingly, on April 21, 2004, the arbitrator ordered the one-

17   year suspension and further ordered Lewis to complete 12 days of anger management.  APM

18   implemented the arbitrator's decision, suspending Lewis from work from April 21, 2004 to

19   April 22, 2005.

20   Local 10 appealed the decision to the Joint Coast Labor Relations Committee, and on

21   November 10, 2004, the Committee denied the appeal.

22                                   **PROCEDURAL HISTORY**

23   On February 16, 2005, Lewis filed six charges with the Equal Employment and

24   Opportunity Commission ("EEOC") and California's Fair Employment and Housing

25   Commission, alleging discrimination based on race and disability.  Lewis received a Notice

26   of Right to Sue, and on August 25, 2006, filed a complaint in Superior Court of San

27   Francisco against APM and PMA.  Defendants removed the action to federal court.

28

1   Lewis's Complaint sets forth eleven claims for relief: (1) discrimination based on race

2   and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.,

3   and the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12900 et

4   seq; (2) harassment/hostile work environment under Title VII and FEHA; (3) violation of the

5   covenant of good faith and fair dealing; (4) intentional infliction of emotional distress; (5)

6   wrongful discipline in violation of public policy; (6) violation of Article 1, Section 7 of the

7   California Constitution; (7) violation of Article 1 Section 8 of the California Constitution; (8)

8   violation of California Government Code section 12948; (9) violation of Business and

9   Professions Code section 17200; (10) defamation; and (11) breach of contract.

10   At a hearing on March 2007, the Court ordered defendants to file their motion for

11   summary judgment by June 1, 2007.  They did so on that date and noticed the motion for

12   hearing on July 13, 2007.  Under the Court's Local Rules, plaintiff's opposition to the motion

13   was due on or before June 22, 2007.  Plaintiff, however, did not file an opposition and did

14   not request a continuance or otherwise seek additional time; instead, on June 28, 2007–the

15   day before defendants' reply memorandum was due–plaintiff filed declarations in opposition

16   to the summary judgment motion as well as exhibits.  On July 8, 2007, plaintiff finally filed a

17   memorandum in opposition to defendants' motion.  Two days later she filed an ex parte

18   motion to modify the briefing schedule, essentially asking the Court to accept her late filings

19   and to continue the hearing date so that defendants could file a meaningful reply.  The Court

20   granted her request, accepted her late-filed papers, and continued the hearing date.

21   **SUMMARY JUDGMENT STANDARD**

22   Summary judgment is proper when "the pleadings, depositions, answers to

23   interrogatories, and admissions on file, together with the affidavits, if any, show that there is

24   no genuine issue as to any material fact and that the moving party is entitled to a judgment as

25   a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" only if there is a sufficient

26   evidentiary basis on which a reasonable fact-finder could find for the nonmoving party, and a

27   dispute is "material" only if it could affect the outcome of the suit under governing law.  See

28   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  A principal purpose of the

5

**United States District Court**
For the Northern District of California

1    summary judgment procedure "is to isolate and dispose of factually unsupported claims."

2    Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  "Where the record taken as a whole

3    could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

4    issue for trial.'" Matsushita Elec. Ind. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

5                                        **DISCUSSION**

6    **I.      Discrimination Based on Race and Sex (Title VII and FEHA)–First Claim**

7              Lewis makes a race and gender discrimination claim under Title VII and FEHA.[1]  See

8    42 U.S.C.A. § 2000e-2 ("It shall be an unlawful employment practice for an employer . . . to

9    . . . discriminate against any individual with respect to his compensation, terms, conditions,

10   or privileges of employment, because of such individual's race, color, religion, sex, or

11   national origin . . . ."); Cal. Gov. Code § 12940 et. seq. (making it an unlawful employment

12   practice to discriminate based on "race, religious creed, color, national origin, ancestry,

13   physical disability, mental disability, medical condition, marital status, sex, age, or sexual

14   orientation.").

15             Lewis's federal and state law claims under Title VII and FEHA are analyzed under the

16   McDonnell-Douglas test.  See Sada v. Robert F. Kennedy Med. Ctr., 56 Cal. App. 4th 138,

17   148 (1997) ("In determining the propriety of summary judgement on a discrimination claim

18   under the FEHA, we look to the test formulated the United States Supreme Court in

19   McDonnell Douglas Corp. v. Green, 411 U.S. 92 (1973), and Texas Dep't of Cmty. Affairs

20   v. Burdine, 450 U.S. 248 (1981), for evaluating claims under Title VII of the Civil Rights

21   Act of 1964."). Under this test, the plaintiff must first establish a prima facie case by

22   showing: (1) she belongs to a protected class, (2) she was qualified for the position, (3) she

23   suffered an adverse employment action, and (4) some other circumstance indicates a

24   discriminatory motive, such as similarly qualified individuals being treated more favorably.

25

26             [1]  Defendants argue that because Lewis never alleged sex discrimination in her EEOC
     complaints, she has failed to exhaust her administrative remedies as required by Title VII and
27   FEHA.  Lewis responds that the Court may take jurisdiction over the sex discrimination part of
     her complaint if a reasonable investigation of the charge as filed would have encompassed the
28   sex discrimination claims.  Because Lewis's sex discrimination claim fails under the McDonnell-
     Douglas test, the Court need not decide this issue.

**United States District Court**
For the Northern District of California

See Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998).  Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the termination.  Id.  If the defendant meets this burden of production, the burden shifts back to the plaintiff to establish that defendant's proffered reason was a pretext for discrimination.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).  If the plaintiff demonstrates pretext, then the burden-shifting framework disappears, and the only remaining issue is "discrimination *vel non*."  See Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 659 (9th Cir. 2002) (citations omitted).  Although the burden of production shifts, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

**A.     Prima Facie Case**

The first two requirements are not at issue: it is undisputed that Lewis belongs to a protected class as an African American female and that she is qualified for her position as a longshore worker.  Lewis also satisfies the third requirement.  She claims she suffered two adverse employment actions: (1) the three days of non-dispatch, and (2) the one-year suspension.  It is undisputed that the one-year suspension constitutes an adverse employment action.  Defendants argue that the non-dispatch does not constitute an adverse employment action because Lewis was able to work and did work for other Member Employers during the three days.  Because Lewis cannot satisfy the fourth requirement, the Court need not decide this issue.

Lewis has not established a prima facie case of discrimination because she has not produced any evidence that suggests a discriminatory motive.  Lewis contends that a discriminatory motive may be inferred from the fact that similarly situated employees outside her protected class were treated more favorably in the grievance process.  Specifically, she claims that it is common for non-African American males to engage in verbal altercations at work, but defendants do not place them on non-dispatch or pursue assault charges against

United States District Court
For the Northern District of California

1  them.  Lewis identifies two situations of which she is "aware" of where two white male

2  employees, Eric Villeggiante and Al Mansford, were involved in verbal altercations at work

3  but, she contends, were not placed on non-dispatch or suspended.  She also points to another

4  white male employee, Richard Mead, who was twice accused of assault but did not receive a

5  one-year suspension.

6         Lewis's evidence is insufficient to create a triable issue of fact.  Lewis must present

7  admissible evidence and designate specific facts showing that there is a genuine issue for

8  trial.  Fed. R. Civ. P. 56(e).  Hearsay evidence opposing summary judgment may be

9  considered if the out-of-court declarant could later present the evidence through direct

10  testimony; i.e., in a form that would be admissible at trial.  J.F. Feeser, Inc. v. Serv-A-

11  Portion, Inc., 909 F.2d 1524, 1542 (3rd Cir. 1990).  Furthermore, the source of the

12  knowledge must be disclosed; it is not sufficient for a witness merely to say that he or she is

13  aware of a fact.  See Fed. R. Evid. 602;  Ward v. First Federal Savings Bank, 173 F.3d 611,

14  617-18 (7th Cir. 1999) (mere statement that a witness was aware of something was held to be

15  insufficient to establish personal knowledge to render the evidence admissible in connection

16  with a summary judgment motion).  Lewis does not have personal knowledge of the events

17  surrounding these employees; she states only that she is "aware" of these employees and does

18  not offer any evidence from persons with personal knowledge of the incidents and how they

19  were resolved.  Her hearsay testimony is therefore inadmissible.

20         Even if Lewis had offered admissible evidence about these employees, however,

21  Lewis still does not satisfy her prima facie burden because the employees that she identifies

22  are not similarly situated.  See Moran v. Selig, 447 F.3d 748, 755 (9th Cir. 2006) (stating that

23  a similarly situated employee must be similarly situated in all material respects).

24         First, Lewis does not identify an employee accused of assault by APM; the employees

25  she identifies are or were employed by other Member Employers who are not defendants in

26  this case.

27         Second, while Lewis points to Villeggiante and Mansford as "[w]hite males who were

28  involved in verbal altercations and were not suspended or barred from work," Lewis Decl. in

United States District Court
For the Northern District of California

1  Opp'n to Def.'s Mot. for Summ. J. ¶ 8, she presents no evidence to suggest that either

2  Villeggiante or Mansford was accused *of assault* by their Member Employer or their

3  coworker.   The relevant question is whether other employees accused of assault–and found

4  guilty of assault by an arbitrator after a hearing–are or were treated more favorably than

5  Lewis.

6         Even assuming that the third employee identified by Lewis--Richard Mead--is a

7  similarly situated employee, Lewis cannot demonstrate that he was treated more favorably.

8  The Member Employer (not defendant APM) in Mead's case pursued an arguably harsher

9  penalty than in Lewis's case; the employer sought to have Mead deregistered from the union,

10 which is a disciplinary action considered more severe than suspension from work.  Indeed, in

11 2002 Mead was initially found guilty of assault and deregistered.  Mead appealed the

12 decision, and the Joint Coast Labor Relations Committee overturned it.  At the rehearing the

13 arbitrator found Mead guilty of deliberate bad conduct, but not assault, and he was assessed a

14 penalty of suspension from work for 120 days.  In 2004, Mead was accused of assault, and

15 the Member Employer again sought a penalty of deregistration, but the arbitrator found him

16 not guilty.  Lewis appears to argue that because the arbitrator and Joint Coast Labor

17 Relations Committee came to different conclusions in Mead's case than in her case, Mead

18 was treated more favorably.  These different conclusions alone are insufficient to

19 demonstrate that defendants had a discriminatory motive; the Longshore Contract requires

20 defendants to implement the arbitrator's decision.  See Wynn v. North American Systems,

21 Inc., 608 F.Supp. 30, 34 (D.C. Ohio 1984) ("an employee cannot proceed against an

22 employer on claims of employment discrimination in violation of [Title VII] when the

23 alleged discriminatory activity by the employer is the implementation of an arbitrator's

24 award pursuant to a collective bargaining agreement entered into between the employee's

25 union, and the employer.").

26         Finally, defendants' evidence as to the only other employees who have been found

27 guilty of assault and worked at the Port of Oakland for PMA Member Employers between

28 January 1, 2000 and December 31, 2006 – Jesus Iniguez, John Hughes, Mario Morilla, and

1  Garland Byrd – further dooms Lewis's discrimination claims.  In each case the Member

2  Employer sought a one-year suspension.  Iniguez and Hughes were suspended for one year;

3  Morilla passed away before a penalty could be assessed; and Byrd retired before a penalty

4  could be assessed.

5  **B.      Legitimate Non-Discriminatory Reason**

6  Even if Lewis had established a prima facie case of discrimination, defendants rebut

7  the presumption of discrimination with a legitimate rationale; namely, that they followed the

8  grievance procedures set forth in the collective bargaining agreement without considering her

9  race or gender.

10  In order to satisfy its burden of production of a legitimate non-discriminatory reason

11  for the termination, "the defendant must clearly set forth, through the production of

12  admissible evidence, reasons for its actions which, *if believed by the trier of fact*, would

13  support a finding that unlawful discrimination was not the cause of the employment action."

14  Raad v. Fairbanks North Star Borough Sch. Dist., 323 F.3d 1185, 1193 (9th Cir. 2003)

15  (emphasis in original) (citations omitted).

16  APM filed a complaint based on Kirkwood's accusation, and the complaint was

17  addressed through the grievance process set forth in the Longshore Contract.  APM put

18  Lewis on non-dispatch pursuant to sections 17.71 and 17.72 of the Contract.  Marzano Decl.,

19  ¶ 5, Ex. A, B; §17.71 ("employer shall have the right to return to the dispatching hall any

20  man . . . for incompetence, insubordination or failure to perform the work as required in

21  conformation with the provisions of the [Longshore Contract].");  § 17.72 (such

22  "longshoreman shall not be dispatched to such employer until his case shall have been heard

23  and disposed of before the [Joint Port Labor Relations Committee] . . . .").  The arbitrator

24  found Lewis guilty of assault and assessed her the minimum penalty of a one-year suspension

25  pursuant to the Longshore Contract.  Marzano Decl., ¶5, Ex. A, B; §17.81 ("any employee

26  who is guilty of deliberate bad conduct in connection with his work as a longshoreman . . .

27  shall be fined, suspended, . . . .");  §17.82 (providing a minimum penalty of one-year

28  suspension from work for a first assault offense).  Accordingly, defendants have articulated a

10

1   legitimate, non-discriminatory reason for Lewis's placement on non-dispatch and the one-

2   year suspension.

3       **C.    Pretext**

4       Even if Lewis could make out a prima facie case of discrimination, she has not

5   produced evidence sufficient to allow a reasonable trier of fact to find that the reasons

6   proffered by defendants for their actions were a pretext for unlawful discrimination.  See

7   Burdine, 450 U.S. at 252.

8       A plaintiff must show that a defendant's explanation is a pretext by "either directly

9   persuading the court that a discriminatory reason more likely motivated the employer or

10  indirectly by showing that the employer's proffered explanation is unworthy of credence."

11  Aragon, 292 F.3d at 658-659 (citations omitted).  A plaintiff need only produce "very little

12  evidence of discriminatory motive to raise a genuine issue of material fact."  Godwin, 150

13  F.3d at 1220.  However, "purely conclusory allegations of alleged discrimination, with no

14  concrete, relevant particulars, will not bar summary judgment."  Forsberg v. Pac. Northwest

15  Bell Tel. Co., 840 F.2d 1409, 1419 (9th Cir. 1988).

16      Lewis argues that defendants' explanation that they followed the terms of the

17  collective bargaining agreement is merely a pretext for discrimination, as demonstrated by

18  the fact that similarly situated employees were treated more favorably.  See Vasquez v.

19  County of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003) ("A showing that the County

20  treated similarly situated employees outside Vasquez's protect class more favorably would be

21  probative of pretext.").  As discussed earlier, however, the evidence Lewis presents consists

22  of "purely conclusory allegations of alleged discrimination, with no concrete, relevant

23  particulars," and is not sufficient to bar summary judgment.  See Forsberg, 840 F.2d at 1419.

24  Lewis has not identified any similarly situated employee who was treated more favorably.

25  The fact that APM and Local 10 and Local 34 could have agreed on a lesser penalty, but did

26  not do so, is not evidence from which a jury could infer pretext.

27

28

United States District Court
For the Northern District of California

1    As Lewis fails to raise a genuine issue of material fact as to her claims of

2    discrimination, her race and gender discrimination claims under Title VII and FEHA fail as a

3    matter of law.

4    **II.    Harassment/Hostile Work Environment (Title VII and FEHA)**

5    Lewis also makes a claim of harassment and hostile work environment under Title VII

6    and FEHA.  She contends she suffered harassment in retaliation for going on disability leave

7    and because of her race and sex.[2]

8    "To prevail on a hostile workplace claim premised on either race or sex, a plaintiff

9    must show: (1) that he was subjected to verbal or physical conduct of a racial or sexual

10   nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe

11   or pervasive to alter the conditions of the plaintiff's employment and create an abusive work

12   environment."  <u>Vasquez v. County of Los Angeles</u>, 349 F.3d 634, 643 (9th Cir. 2003).

13   Lewis cannot satisfy the essential elements of her harassment and hostile work

14   environment claim.  Lewis presents no evidence that she was subjected to verbal or physical

15   conduct of a racial or sexual nature.  To the extent that Lewis argues the harassing conduct is

16   based on her race, sex or disability, as discussed earlier, she presents no evidence that

17   defendants improperly took these criteria into consideration during the grievance process.

18   For the same reasons, Lewis cannot show that defendants' conduct was sufficiently severe or

19   pervasive to alter the conditions of her employment and create an abusive work environment.

20   Finally, to the extent that Lewis argues that she was harassed because she went on

21   disability leave, she presents no evidence to show that defendants pursued the complaint of

22   assault against her for retaliatory reasons.  Lewis merely states in her declaration that "PMA,

23   APM, the Unions, Kirkwood and I, had already agreed to a resolution of the entire situation,

24   which permitted me to continue to work at APM with Local 34.  It allowed for Kirkwood and

25   I to work at separate work locations at the terminal if necessary."  Lewis Decl. in Opp'n to

26

27   _____

         [2]  Defendants argue that because Lewis never alleged racial or sexual harassment in her
     EEOC complaints, she has failed to exhaust her administrative remedies under FEHA and Title
28   VII.  Because her harassment claim fails on the merits, the Court need not undertake this
     analysis.

Mot. for Summ. J., ¶ 12.  This vague statement is insufficient to create a genuine dispute of fact as it appears to refer to the agreement to allow Lewis to continue work pending resolution of the complaints against her; it is not evidence that the parties had finally resolved those complaints.  As such, it is consistent with defendants' evidence.

Accordingly, Lewis's claim of harassment and hostile work environment fails.

**III.   Breach of Contract and Violation of the Covenant of Good Faith and Fair Dealing --Third and Eleventh Claims**

Lewis also claims that defendants breached their contract with her and breached the covenant of good faith and fair dealing by discriminating and retaliating against her. Because both claims necessarily involve interpretation of a collective bargaining agreement, they are preempted by section 301 of the Labor Management Relations Act ("LMRA").

Section 301 of the LMRA establishes federal jurisdiction for "[s]uits for violation of contracts between an employer and a labor organization."  29 U.S.C. § 185(a).  The LMRA therefore preempts any state cause of action for breach of a collective bargaining agreement. See Jimeno v. Mobil Oil Corp., 66 F.3d 1514, 1522 (9th Cir. 1995).  "Despite the breadth of § 301 complete preemption, not every claim which requires a court to refer to the language of a labor-management agreement is necessarily preempted."  Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1108 (9th Cir. 2000) (internal quotations omitted).  Rather, federal preemption is mandated only if the application of state law requires interpretation of a collective bargaining agreement.  See Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 413 (1998).  The term "interpret," within the context of section 301 complete preemption, requires more than merely looking at, considering, referring to, or applying the terms of the agreement.  See Balcorta, 208 F.3d at 1108.

It is undisputed that Lewis's employment is governed by a collective bargaining agreement, the Longshore Contract.  In fact, all of Lewis's claims are based on conduct defendants engaged in pursuant to the Contract; namely, resolving the complaints against Lewis through the grievance process set forth in the agreement.  Because the breach of contract claim necessarily involves interpretation of the Longshore Contract to determine if defendants complied with its terms, the breach of contract claim is preempted.

1   For the same reasons Lewis's claim of breach of the covenant of good faith and fair

2   dealing fails.  This implied covenant is derived from the contract itself.  "Every contract

3   imposes upon each party a duty of good faith and fair dealing in its performance and its

4   enforcement."  Restatement (Second) of Contracts § 205.  The scope of conduct prohibited

5   by the covenant of good faith is circumscribed by the purposes and express terms of the

6   contract.  Carma Developers, Inc. v. Marathon Dev. Cal., Inc., 826 P.2d 710, 727-28 (1992);

7   Foley v. Interactive Data Corp., 765 P.2d 373 (1988).

8   Even if Lewis's claims of breach of contract and breach of the covenant of good faith

9   and fair dealing were not preempted, the claims fail on their merits as they are necessarily

10   derivative of plaintiff's discrimination claims.  Because Lewis raises no genuine issue of

11   material fact as to whether defendants applied the Longshore Contract to her in a

12   discriminatory manner, these claims must also fail.

13   **IV.   Intentional Infliction of Emotional Distress--Fourth Claim**

14   **Employment Practices/Wrongful Discipline in Violation of Public Policy-- listed as the "Fourth Cause of Action" in the Complaint**

15   Lewis alleges that defendants intentionally caused her emotional distress by

16   discriminating against her based on her race, sex and disability.  She also asserts a claim of

17   wrongful discipline in violation of public policy.  As these claims are necessarily derivative

18   of her discrimination claim, and because Lewis raises no genuine issue of material fact as to

19   her discrimination claim, these claims must also fail.[3]

20   **V.    Violation of Article 1, Section 7 of the California Constitution--listed as the "Fifth Cause of Action" in the Complaint)**

21

22   Lewis concedes that this claim was "erroneously included in this matter."  Pl.'s Opp'n

23   to Mot. for Summ. J. 20.

24   **VI.   Violation of Article 1 Section 8 of the California Constitution--listed as the "Sixth Cause of Action" in the Complaint**

25

26

27   _____

28   [3]  Defendants also argue that to the extent the wrongful discipline claim is based on the three days of non-dispatch, it is barred by the two-year statute of limitations period (Cal. Civ. Proc. Code 335.1).  Because Lewis's claim fails on the merits, the Court need not address this issue.

1  Lewis contends that defendants failed to provide her equal employment opportunities

2  in violation of Article 1, section 8 of the California Constitution, which states: "A person

3  may not be disqualified from entering or pursuing a business, profession, vocation, or

4  employment because of sex, race, creed, color, or national or ethnic origin."

5  Defendants argue that because Lewis was not terminated, constructively or otherwise,

6  her claim fails. "Article I, section 8 . . . does not create a private cause of action to redress

7  private employment discrimination that does not result in termination." See Simpson v.

8  Martin, Ryan, Andrada & Lifter, 1997 WL 542701 *5 (N.D. Cal. 1997);  Himaka v. Buddhist

9  Churches of Am., 919 F.Supp. 332, 335 (N.D. Cal. 1995); see also Strother v. Southern Cal.

10 Permanente Med. Group,  79 F.3d 859, 872 (9th Cir. 1996) ("The plain language of Article I,

11 § 8 indicates that '[a] person may not be disqualified ... from entering or pursuing' a

12 particular position. The provision does not use words such as 'limited' or 'restricted' which

13 might indicate that discrimination in the conditions of employment are likewise prohibited

14 . . . § 8 governs actions which result in the complete exclusion of an individual from

15 employment . . . .") (footnote omitted).  They contend that because Lewis does not claim she

16 was terminated or constructively terminated by Defendants, she was not "disqualified" from

17 entering or pursuing her employment because of her race or sex and therefore, her claim

18 under Article 1, section 8 of the California Constitution fails as a matter of law.

19 Plaintiff responds that a private right of action "exists when it is made through a state

20 tort law mechanism such as wrongful discipline in violation of public policy."  Pl.'s Opp'n to

21 Mot. for Summ. J. 20.   Even assuming she has a cause of action, however, her claim fails on

22 the merits for the same reason her claim for wrongful discipline in violation of public policy

23 fails on the merits; she has not produced evidence sufficient to support a finding that

24 defendants discriminated against her during the grievance process.

25 **VII.   Violation of Government Code Section 12948--listed as the "Fifth Cause of
         Action" in the Complaint**

26

27 Lewis asserts a violation of California Government Code section 12948, which

   provides that it "is an unlawful practice . . . for a person to deny or to aid, incite, or conspire

28

15

United States District Court
For the Northern District of California

in the denial of the rights created by Section 51, 51.5, 51.7, 54, 54.1, or 54.2 of the Civil Code." This claim fails as a matter of law.

To the extent Lewis seeks to base her claim on section 51, her claim fails.[4] Section 51, known as the Unruh Civil Rights Act, states: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, or disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51. Although the term "business establishment" has broad meaning, the Unruh Civil Rights Act does not apply to discrimination in employment. Alcorn v. Anbro Eng'g, Inc., 468 P.2d 216, 220 (1970) (concluding that the intent of the legislature was to exclude discrimination in employment from section 51 and restrict the scope to discrimination made by a "business establishment" in the course of furnishing goods, services or facilities to its clients, patrons or customers).

For the same reason any claim under section 51.5 also fails as a matter of law. Section 51.5 states: "No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from, contract with, sell to, or trade with any person in this state on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51 . . . ." This section is aimed at "discrimination in relationships similar to the proprietor/customer relationship," and does not apply to the employment relationship. Strother v. Southern Cal. Permanente Med. Group, 79 F.3d 859, 875 (9th Cir. 1996); see also Pines v. Tomson, 160 Cal. App. 3d 370, 384 (1984) (holding that "business establishment of every kind whatsoever" has the same meaning under sections 51 and 51.5). In addition, as with the other claims, plaintiff has not produced evidence sufficient to support a discrimination finding by a reasonable jury.

**VIII. Violation of Business and Professions Code Section 17200--listed as the "Sixth Cause of Action" in the Complaint**

---

[4]Lewis could not base her claim on violations of sections 54, 54.1, or 54.2, which concern guide and service dogs, and public access for disabled persons.

1    Lewis asserts a claim under the California Business and Professions Code section

2    17200, which prohibits unfair competition, defined as "any unlawful, unfair or fraudulent

3    business act or practice and unfair, deceptive, untrue or misleading advertising and any act

4    prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the

5    Business and Professions Code."  Because Lewis's unfair business practices claim is

6    necessarily derivative of her discrimination claim, and because Lewis raises no genuine issue

7    of material fact as to her discrimination claim, this claim must also fail.

8    **X.    Defamation--listed as the "Seventh Cause of Action" in the Complaint**

9    Lewis makes a claim of defamation based on defendants' allegedly false accusations

10    of assault.  The Complaint alleges that on or about May 15, 2002, "Defendants published

11    false information about [Lewis] accusing her of assault."  Boyd. Decl. Ex. 1, 10, ¶ 69.

12    Defendants contend this claim is barred by the one year statute of limitations for

13    defamation claims.  Cal. Civ. Proc. Code § 340(c).  As a general rule, a cause of action for

14    libel accrues when the defamatory matter is published.  Manguso v. Oceanside Unified

15    School Dist., 152 Cal. Rptr. 27, 28 (1979).  A party has a cause of action for libel each time

16    the defamatory matter is published.  Kanarek v. Bugliosi, 166 Cal. Rptr. 526, 529-30 (1980).

17    Lewis argues that the false statements are "continuing to the present" and therefore

18    her claim is not barred.  Opp'n to Mot. for Summ. J. 21 (defendants made statements to the

19    effect that plaintiff committed assault  "in the workplace, to the EEOC, and continuing to the

20    present.").  Despite Lewis's sweeping assertion in her memorandum, however, she does not

21    identify any evidence of statements made by defendants apart from the initial accusation of

22    assault on or about May 15, 2002.  Because Lewis did not file her complaint until March 21,

23    2006, her defamation claim is barred by the one-year statute of limitations.

24    **XI.    PMA is Not Lewis's Employer**

25    PMA also moves for summary judgment on the Title VII and FEHA discrimination

26    claims on the ground that it is not Lewis's employer.  It argues that PMA is not Lewis's

27    employer and therefore cannot be held liable under either statute.  See 42 U.S.C. § 2000e-2;

28

17

1   Cal. Gov. Code § 12920 (making it unlawful employment practice for an *employer* to

2   discriminate).

3       Plaintiff has failed to produce evidence sufficient to permit a jury to find that PMA is

4   plaintiff's employer because it lacks the necessary level of control.  See Anderson v. Pacific

5   Maritime Ass'n, 336 F.3d 924, 925 (9th Cir. 2003) (rejecting the argument that PMA was an

6   "integrated enterprise" with its Member Employers);  EEOC v. Pacific Maritime Ass'n, 351

7   F.3d 1270, 1277 (9th Cir. 2003) (holding PMA was not a "joint employer" with stevedoring

8   company).  PMA is the collective bargaining agent for Member Employers which employ

9   longshore workers such as Lewis.  Under the terms of the collective bargaining agreements,

10  the Member Employers, not PMA, have the right to hire, supervise, direct, and terminate

11  employees.  Furthermore, although PMA has the general responsibility for ensuring that

12  member-employers comply with the terms of the collective bargaining agreement, PMA does

13  not have the right to adjudicate grievances or take disciplinary action against employees.  Id.

14  That right is vested in the Joint Committees, which are comprised of representatives

15  appointed by the Member Employers and the ILWU-affiliated Locals, not by PMA.

16      Lewis responds that PMA is her employer because it has "responsibility for enforcing

17  the terms and conditions of employment" and it has acted and represented itself as her

18  employer.  Lewis states that PMA keeps a personnel file containing her employment

19  information; she is paid by PMA; and she reports to PMA to be assigned work.  In addition,

20  Lewis's INS I 9 employment form and 2006 W2 form identify PMA as her employer.  Lewis

21  also points out that in PMA's response to her EEOC complaint, PMA did not raise the

22  argument that it is not her employer.  This evidence, however, does not demonstrate that

23  PMA had the requisite right to control the manner and means by which Lewis performed

24  work for Member Employers.  See Vernon v. State, 116 Cal. App. 4th 114, 124, 126 (2004)

25  (reiterating the factors to consider in determining employer status, the most important of

26  which is the right to control the means and manner of the worker's performance).

27

28

United States District Court
For the Northern District of California

18

1    Because Lewis raises no genuine issue of material fact as to whether PMA is her

2    employer, the Court must enter judgment in favor of PMA as to the Title VII and FEHA

3    claims against it for this additional reason.

4                    **PLAINTIFF'S REQUEST FOR ADDITIONAL DISCOVERY**

5        Federal Rule of Civil Procedure 56(f) provides that if a party opposing summary

6    judgment demonstrates a need for further discovery in order to obtain facts essential to justify

7    the party's opposition, the trial court may deny the motion for summary judgment or continue

8    the hearing to allow for such discovery.  In making a Rule 56(f) motion, a party opposing

9    summary judgment "must make clear what information is sought and how it would preclude

10   summary judgment."  Garrett v. City and County of San Francisco, 818 F.2d 1515, 1518 (9th

11   Cir. 1987).  References in memoranda and declarations to a need for discovery do not qualify

12   as motions under Rule 56(f).  Brae Transp., Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1443

13   (9th Cir. 1986).  Rule 56(f) requires affidavits setting forth the particular facts expected from

14   the discovery.  Id.  Failure to comply with the requirements of Rule 56(f) is a proper ground

15   for denying discovery and proceeding to summary judgment.  Id.; Foster v. Arcata

16   Associates, Inc., 772 F.2d 1453, 1467 (9th Cir. 1985).

17       The party seeking discovery cannot complain if it fails to pursue discovery diligently

18   before summary judgment.  Brae, 790 F.2d at 1443; Frederick S. Wyle, P.C. v. Texaco, Inc.,

19   764 F.2d 604, 612 (9th Cir. 1985).  The party seeking discovery must explain its inability to

20   presently provide the evidence it seeks to discover; that is, it must show that it previously

21   exercised due diligence to obtain the evidence it now seeks a continuance to obtain.  Brae,

22   790 F.2d at 1442-43.

23       In her Opposition to Defendants' Motion for Summary Judgment plaintiff states that

24   "Defendants used document[s] to support their motions that they refused to produce in

25   response to discovery requests in this matter," and that "Plaintiff is prejudiced by these

26   documents and the lack of adequate discovery."  Opp'n to Mot. for Summ. J. 1; Boyd Decl.

27   2, ¶ 5.  Lewis indicates that more discovery is needed in the form of documents concerning

28

19

United States District Court
For the Northern District of California

1    other "similarly situated" employees, including Mead, and interrogatories and depositions of

2    "key defendant personnel."  Boyd. Decl. ¶ 6.

3          Lewis has not shown good cause for continuing the summary judgment motion.  First,

4    she has failed to comply with the requirements of Rule 56(f).  Lewis's vague references to

5    her need for additional discovery in her Opposition and the Declaration of Plaintiff's counsel

6    do not qualify as motions.  Furthermore, Lewis did not exercise due diligence to obtain the

7    evidence she now seeks a continuance to obtain.  The record reflects that Lewis never

8    responded to defendants' meet-and-confer letter requesting that she specify whom she

9    wished to depose at PMA.  Lewis also did not respond or meet-and-confer with defendants

10   concerning their objections and responses to her discovery requests.  Lewis has never tried to

11   refine her requests or request additional discovery beyond the original request, and she never

12   filed a motion to compel.

13         Lewis has also not made "clear what information is sought" and, most importantly,

14   how it would preclude summary judgment."  <u>Garrett</u>, 818 F.2d at 1518**.**  She has not

15   identified any evidence she expects to discover that would create a genuine issue of material

16   fact sufficient to defeat summary judgment.  Accordingly, the Court will not further continue

17   defendants' motion.

18                                    **CONCLUSION**

19         Lewis cannot legally challenge the arbitrator's finding that she committed an assault

20   against a co-worker; instead, she filed this complaint alleging discrimination in the grievance

21   process.  She has been unable, however, to produce even a scintilla of evidence that suggests

22   defendants treated her more harshly or different from others because of her race, gender or

23   disability.  Accordingly, defendants' motion for summary judgment on all claims is

24   GRANTED.

25         **IT IS SO ORDERED.**

26

27   Dated: August 24, 2007                  _____
                                             CHARLES  R. BREYER
                                             UNITED STATES DISTRICT JUDGE
28

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28